So Ordered.

Dated: January 31, 2023



G. Michael Halfenger  
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT  
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Scott W. Charmoli  
and Lynne M. Charmoli,

Case No. 22-24358-gmh

Debtors in possession.

Chapter 11

**DECISION AND ORDER**  
**DENYING REQUEST TO EXTEND TIME TO FILE PROOF OF CLAIM**

Debtors Scott and Lynne Charmoli commenced this joint bankruptcy case under subchapter V of chapter 11 on October 3, 2022, and on the same day filed a motion under Federal Rule of Bankruptcy Procedure 3003(c)(3) requesting that the court set the deadline for filing proofs of claim. ECF Nos 1 & 9. The court considered the request at hearings held on October 11 and December 2, 2022, and then entered an order on January 9, 2023, that sets March 13, 2023, as the deadline. ECF Nos. 25, 83 & 119.

Creditors Major Dental Partners, LLC (Major LLC) and Dr. Pako Major, its principal (collectively, the Major Creditors), ask for an indefinite extension of the March 13 claims-bar deadline. ECF No. 107. The Major Creditors make this request as part of a

motions package in which they also ask the court to remand state court litigation the debtors removed to this court, modify the automatic stay to allow the state court litigation to continue, abstain from adjudicating the parties' state-law claims, and postpone adjudication of their claims that Charmoli owes them debts that are not dischargeable under 11 U.S.C. §523(a)(2) and (a)(6). Whatever merit the rest of these requests may have (the adjudication of which is left for another day), the Major Creditors' request to indefinitely extend the time in which they may file proofs of claim is a nonstarter. It seeks a ruling that the Second Circuit aptly called a "dangerous precedent" more than three decades ago, *First Fid. Bank, N.A., New Jersey v. Hooker Invs., Inc.* (*In re Hooker Invs., Inc.*), 937 F.2d 833, 839 (2d Cir. 1991) (quoting observations of the bankruptcy court in the same case), and no controlling authority since has disagreed.

I

Before his conviction for healthcare fraud in 2022, debtor Scott Charmoli practiced dentistry in Jackson, Wisconsin, and was the sole member of Jackson Family Dentistry, LLC (the Debtor LLC). In January 2019, the Debtor LLC sold most of its assets to Major LLC, for $2.3 million. Major LLC agreed to pay $1.25 million in cash on the closing date and the remainder under the terms of a 10-year promissory note. Adv. Proc. No. 22-02136, ECF No. 1-1, at 155–98. Dr. Major guaranteed repayment of the note. *Id.* at 199–202. Jackson Family Dental, another entity controlled by Dr. Major, agreed to employ Charmoli for a period immediately following the sale. *Id.* at 211–25.

In October 2019 the Debtor LLC and Charmoli sued the Major Creditors in a Wisconsin state court. Their amended complaint, which also named Jackson Family Dental as a defendant, principally alleges that the Major Creditors owe the Debtor LLC about $1 million in damages for failing to make payments due under the promissory note and that Jackson Family Dental owes Charmoli unpaid wages. *Id.* at 144–225. In March 2020, the Major Creditors filed counterclaims against Charmoli and the Debtor

LLC for breach of the asset purchase agreement; breach of a duty of good faith and fair dealing allegedly implied in the asset purchase agreement; intentional misrepresentations in connection with the promissory note, guaranty, and employment agreement; fraud in the inducement of the promissory note, guaranty agreement and employment agreement; and theft by fraud. *Id.* at 104–15. The gist of the counterclaims is that before the parties signed the asset purchase and related agreements, Charmoli had engaged in a repeated practice of damaging patients' healthy teeth to defraud insurance carriers—the conduct on which Charmoli's criminal charges were based—that he did not disclose to the Major Creditors. The Major Creditors alleged that they are entitled to recission of the promissory note, the guaranty agreement, and the employment agreement, as well as an award of damages, including attorney's fees, in an unspecified amount, exemplary damages equal to three times the amount of actual damages, and punitive damages. *Id.* at 114–15.

After petitioning for bankruptcy protection, Charmoli removed the claims in the litigation with the Major Creditors and Jackson Family Dental to this court pursuant to title 28's bankruptcy removal provision, 28 U.S.C. §1452(a). On January 3, 2023, the Major Creditors responded with the motions package mentioned earlier seeking, among other things, an order remanding the parties' litigation to state court and granting the Major Creditors an enlargement of the March 13, 2023 claims-bar deadline so that their proofs of claim will be timely as long as they file them no later than "14 days after any judgment" by the state court awarding them damages "becomes final." ECF No. 107, at 15.

II

A

The filing of a bankruptcy petition creates a bankruptcy estate containing the debtor's non-exempt property. See 11 U.S.C. §541. And, in the absence of creditor consent to different treatment, a chapter 11 plan must generally commit to paying holders of allowed claims either the amount they are due under nonbankruptcy law or the amount they would receive in a chapter 7 liquidation of the estate's property. 11 U.S.C. §1129(a)(7). The Charmolis have proposed a chapter 11 plan under which they will liquidate estate property to pay holders of allowed claims. ECF No. 110, at 4.

Creditors with disputed, unliquidated, or contingent claims against a chapter 11 debtor must file timely proofs of claim to have their claims allowed. 11 U.S.C. §§501, 502(a), 502(b)(9) & 1111(a); see also Fed. R. Bankr. P. 3003(b)(1) & (c)(2). The debtors scheduled the Major Creditors' claims as being disputed, unliquidated, and contingent. ECF No. 1 at 93 & 99. As a result, by operation of Bankruptcy Rule 3003(c)(2), the Major Creditors will only "be treated as [ ] creditor[s] with respect to such claim[s] for the purposes of voting and distribution" if they file "proof[s] of claim . . . within the time prescribed by subdivision (c)(3) of" Rule 3003.

Bankruptcy Rule 3003(c)(3) governs the deadline for filing proofs of claim in chapter 11 cases: "The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Setting the claims-bar deadline, the Seventh Circuit has observed, serves the important administrative purpose of requiring creditors who seek payment from the bankruptcy estate to identify themselves and to quantify their claims promptly: "[T]he purpose of the filing deadlines is 'to enable the debtor and his creditors to know, reasonably promptly, what parties are making claims and in what general amounts.'" *In re Stavriotis*, 977 F.2d 1202, 1205 (7th Cir. 1992)

(emphasis omitted) (quoting *United States v. Kolstad* (*In re Kolstad*), 928 F.2d 171, 173 (5th Cir. 1991)). "Once the claims are in, the parties may concentrate on determining their validity and providing for payment. How they will proceed depends on who claims how much." *Holstein v. Brill*, 987 F.2d 1268, 1270 (7th Cir. 1993).

Filing a proof of claim is relatively simple—it may be accomplished by submitting a three-page form. Fed. R. Bankr. P. 3001(a). But, as the Seventh Circuit has cautioned, "Creditors who do not do even that much, on time, forfeit their entitlement to distributions from the estate." *Matter of Plunkett*, 82 F.3d 738, 742 (7th Cir. 1996).

B

A party requesting an enlargement of time to file a proof of claim bears the burden of showing that there is cause for the enlargement. *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005) (first citing *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000), then citing *In re Andover Togs, Inc.*, 231 B.R. 521, 549 (Bankr. S.D.N.Y. 1999)). Enlargement of the claims-filing deadline for individual creditors is governed by Rule 9006(b)(1). See *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 382–83 (1993); see also *In re Morgan*, No. 18-24459, 2019 WL 548532, at *4 (Bankr. E.D. Wis. Feb. 11, 2019). As Judge Ludwig explained in *Morgan*, "Under Rule 9006(b)(1), the court can generally extend a deadline 'for cause,' if the party seeking the extension asks *before* the applicable deadline expires." *Morgan*, 2019 WL 548532, at *4. Rule 3003(c)(3) provides that the court may "extend the time within which proofs of claim . . . may be filed" "for cause shown". And, in the context of a request for enlargement of the deadline by a single creditor, *Pioneer* applies Rule 9006(b)(1)'s enlargement of time principles to inform Rule 3003(c)(3)'s "for cause shown" provision. *Pioneer*, 507 U.S. at 382–83 & 390–91.

The Major Creditors seek enlargement of the claims-filing deadline only for themselves. They do not contend that the March 13 deadline unfairly prejudices creditors generally.[1] Nor do they suggest that they are unable to file a proof of claim by that deadline, which remains almost six weeks away. They instead ask the court to allow them to file proofs of claim "14 days after [their] claims are liquidated in the State Court Litigation and any judgment . . . becomes final" (ECF No. 107, at 14–15) solely to preserve their (supposed) right to try their state-law claims to a jury. The Major Creditors' reply brief leaves no doubt about this:

> Major Dental **only seeks to preserve its jury trial rights**. As stated in the Motion to Abstain, Major Dental will file a proof of claim after the State Court has liquidated Major Dental's claims. . . . Major Dental, therefore, will submit to the equitable jurisdiction of this Court, but **not until after it has exercised its right to a jury trial**.

ECF No. 129, at 17 (emphasis added).[2]

The Major Creditors' premise—that filing proofs of claim will waive their right to try claims against Charmoli to a jury—is correct. A creditor who files a proof of claim

---

[1] As noted above, the court considered the debtors' request to fix the proof of claim deadline at two hearings in 2022. At the first hearing, on October 11, 2022, the court held the request in abeyance until after the debtors completed their contemplated efforts to amend their schedules to add additional creditors. ECF No. 25, at 2. The debtors gave the Major Creditors' counsel notice of their motion to set the deadline to file proofs of claim and the October 11 hearing, as ordered by the court. ECF Nos. 13 & 14. At the second hearing, on December 2, 2022, the court ruled that it would fix the bar date at 60 days after the debtors employed an administrative agent to allow creditors to monitor the proceedings electronically. ECF No. 83. The debtors gave the Major Creditors and their counsel notice of that hearing too. ECF Nos. 56 & 70. The Major Creditors did not appear at either of the hearings nor did they object to the debtors' request to set the bar deadline.

[2] The asset purchase agreement that lies at the center of the Major Creditors' dispute with Charmoli casts doubt on the extent to which the Major Creditors have a jury-trial right. It expressly waives the parties' right to trial by jury of any proceeding "in connection" with it. Adv. Proc. No. 22-02136, ECF No. 1-1, at 170; see also ECF No. 1-1, at 202 (Guaranty agreement states "Guarantor . . . expressly waives the right to trial by jury"). This decision and order does not resolve this question; it presumes that the Major Creditors have a right to try their claims to a jury, without adjudicating the existence of that right or its scope.

"subject[s] itself to the bankruptcy court's equitable jurisdiction and thus can no longer demand a right to a trial by jury." *SNA Nut Co. v. Haagen-Dazs Co., Inc.*, 302 F.3d 725, 730 (7th Cir. 2002). By filing a proof of claim, a "creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting [the creditor] to the bankruptcy court's equitable power". *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (per curiam) (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 & n.14 (1989)); see also *Katchen v. Landy*, 382 U.S. 323 (1966); *Matter of Peachtree Lane Assocs, Ltd.*, 150 F.3d 788, 798–99 (7th Cir. 1998).

The Major Creditors thus want an extension of time to file their proofs of claim for purely strategic purposes—so that they can have their cake and eat it too. Their requested extension would facilitate their plan to try their claims against Charmoli to a state court jury, separate and apart from the bankruptcy proceedings, while preserving their ability to later join the bankruptcy proceedings to pursue payment of a jury award from the liquidation of Charmoli's bankruptcy estate property. That plan contravenes a central bankruptcy tenet—that the bankruptcy case provides a single equitable forum in which the validity and amount of claims against the bankruptcy estate can be determined *efficiently*. If the court allows the Major Creditors to file proofs of claim on some future day after their state-court litigation has finally concluded, the debtors and other creditors may have to wait months, if not years, to find out whether the Major Creditors have allowed claims (and, if so, in what amount) that must be paid through the debtors' chapter 11 plan from property of the bankruptcy estate.[3] To allow that

---

[3] The Major Creditors' state-court pleadings do not allege the amount of their claimed damages. See Adv. Proc. No. 22-02136, ECF No. 1-1, at 104–15. But a report by Terry Hoover and Allen Jacque, two of their proffered experts, opines that Dr. Major's $3.7 million investment in the practice he purchased from Charmoli is "at risk" in an amount that the "Trier of Fact is best suited" to determine. *Id*. at 592. The report suggests quantifiable—but unquantified—damages from lost patients, the opportunity cost of engaging in litigation, and a negative effect on expansion of Dr. Major's practice, among other things. *Id.* at 593. The report opines that the Major Creditors are entitled to a complete offset of the almost $1 million they owe under the asset purchase agreement and promissory note. *Id.* at 593–98. The report also opines

course is to invite compounding the very group-action problem that the Bankruptcy Code's claims-allowance process is designed to minimize, if not eliminate. Other creditors with unliquidated disputed claims against Charmoli, of which there are many, might seek the same dispensation—defer their participation in the bankruptcy case in favor of proceeding with jury trials in state court.

As mentioned earlier, allowing "anybody who felt that they might . . . be prejudicing themselves . . . by filing a Proof of Claim" to defer that filing "would 'set[ ] a very dangerous precedent.' " *Hooker Invs.*, 937 F.2d at 839 (omissions and alteration in original) (quoting observations of the bankruptcy court in the same case). In rejecting another creditor's effort to preserve a jury-trial right by requesting that it be allowed to delay filing a proof of claim, the Second Circuit concluded that the proposed course would "dismember" the claims-allowance scheme established by Congress:

> **A bar order serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization.** To be sure, the amount of the claims may not be finally determined until adversary proceedings have been concluded, but establishing the identities and interests of the participants so that the claims-allowance process may begin is an essential function served by a bar order. Thus, a bar order does not "function merely as a procedural gauntlet," but as an integral part of the reorganization process. **If individual creditors were permitted to postpone indefinitely the effect of a bar order so long as adversary proceedings were pending, the institutional means of ensuring the sound administration of the bankruptcy estate would be undermined.**
>
> Indeed, so important are the interests served by the bar order that, as stated above, a creditor who fails to file a proof of claim by the bar date may be entirely barred from sharing in the distribution of the bankruptcy estate.

---

that Charmoli's alleged performance of unnecessary procedures "likely invalidate[s]" Charmoli's (and thus the bankruptcy estate's) claim under his employment agreement with Jackson Family Dental. *Id*. at 599. Plainly the Major Creditors contend that they have substantial pre-petition damages claims against Charmoli that, in their view, might offset the estate's effort to collect amounts due on the promissory note, the guaranty, and the employment agreement.

> Bankruptcy Rule 3003(c)(2). If that is so**, observance of a bar date clearly may be required even if it alters the method of fact-finding on the merits of the claim by limiting the availability of a jury trial.**

*Hooker Invs.*, 937 F.2d at 840 (emphasis added) (citations omitted) (first quoting *Katchen*, 382 U.S. at 339, then quoting *Kolstad*, 928 F.2d at 173); see also *In re KMart Corp.*, 381 F.3d 709, 715 (7th Cir. 2004) (quoting first paragraph of same passage from *Hooker Invs.*, 937 F.2d at 840); *In re Energy Future Holdings Corp.*, 522 B.R. 520, 537–38 (Bankr. D. Del. 2015) ("the establishment of a bar date is consistent with the goals of the Bankruptcy Code."); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec.*, LLC, No. 08-01789, 2009 WL 458769, at *2 (Bankr. S.D.N.Y. Feb. 24, 2009) (quoting *Hooker Invs.*, 937 F.2d at 840).[4]

The Major Creditors thus have not shown cause to justify their requested relief from the claims-bar deadline. Considering the relevant circumstances and weighing the effects of the requested relief, I conclude that the benefit to the Major Creditors, if any, of allowing them to postpone filing a proof of claim until months or years after the claims-bar deadline, is overwhelmingly outweighed by the detrimental effect on the effective administration of the bankruptcy case. The debtors, the trustee, and other creditors are entitled to know sooner, rather than later, how much the Major Creditors contend they are owed. Timely filing of their claims and those of others who desire

---

[4] The Major Creditors' effort to preserve their jury-trial right by making a pre-deadline request to file belated proofs of claim fares no better than requests to enlarge the deadline after letting it pass for the purpose of preserving a jury-trial right—a tactic that has been repeatedly rejected. See *In re Graham Bros. Const., Inc.*, 451 B.R. 646, 653 (Bankr. S.D. Ga. 2011) ("There was no carelessness or mistake involved but rather there was a deliberate effort to avoid the jurisdiction of the bankruptcy court to keep the case in the Florida state court and preserve the right to a jury trial."); *In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 362 (Bankr. S.D.N.Y. 1993) ("Thus, a creditor is faced with a choice: to either file a proof of claim and subject oneself to the equitable jurisdiction of the bankruptcy court, thereby potentially limiting the availability of a jury trial, or not file a proof of claim and be barred from receiving any distribution of estate assets. To align himself with the distribution process, [creditor] would have had to comply with the terms of the bar order by filing a proof of claim. While [creditor's] failure to file a timely proof of claim resulted from an ill-conceived strategy, it does not amount to excusable neglect.").

payment from the bankruptcy estate is the best course to facilitate the equitable distribution of estate property to pay those claims.

III

For these reasons, IT IS THEREFORE ORDERED that the Major Creditors' request for an enlargement of the claims-bar deadline is DENIED.

# # # #